Andrew Roman Perrong, OSB No. 243320
a@perronglaw.com
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, PA 19038
215-225-5529
Attorney for Plaintiff and the Proposed Class

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>BuyerLink Inc.<br><br>and<br><br>Harley Exteriors, Inc.<br><br>Defendants. | Case No. 3:24-cv-2114<br><br><br>CLASS ACTION COMPLAINT TCPA (47 U.S.C. § 227) DEMAND FOR JURY TRIAL |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell

Complaint                                          1

phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      However, the TCPA doesn't only restrict robocalls.

3.      "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

4.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')...Private suits can seek either monetary or injunctive relief. *Id*...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against

invasions of privacy that were harming people.  The law empowers each person to protect his

own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA

affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon

their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

5.     Plaintiff Leon Weingrad ("Plaintiff") brings this action under the TCPA alleging

that BuyerLink Inc. sent pre-recorded telemarketing calls on behalf of Harley Exteriors, Inc.

promoting their goods and services, including to calls that were on the National Do Not Call

Registry, such as the Plaintiff. Those calls were made without the call recipient's prior express

written consent.

6.     Plaintiff further alleges that Defendants continued to place those calls, even after

they were on notice, *via a letter sent from counsel*, no less, that the calls were to cease.

7.     Because the calls were transmitted using technology capable of generating

thousands of similar calls per day, Plaintiff brings this action on behalf of a proposed nationwide

class of other persons who were sent the same illegal telemarketing calls.

8.     A class action is the best means of obtaining redress for the Defendants' illegal

telemarketing and is consistent both with the private right of action afforded by the TCPA and

the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## **Parties**

9.     Plaintiff Leon Weingrad has a 503- telephone number associated with this

District, in Clackamas County.

10.     Defendant BuyerLink Inc. is a Delaware corporation with its headquarters and

principal place of business in California that specializes in lead generation for the home

improvement industry.

Complaint                                    3

11.    Defendant Harley Exteriors, Inc. is a Washington corporation with its headquarters and principal place of business in Washington that is a home improvement company that works in Washington and Northern Oregon.

## Jurisdiction & Venue

12.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

13.    The Court has specific personal jurisdiction over Defendants because they directed their conduct into Oregon by calling individuals with Oregon telephone numbers, including those, like Plaintiff, possessing 503- area code numbers, which are associated with this District.

14.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were sent into this District.

## The Telephone Consumer Protection Act

15.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The National Do Not Call Registry

16.    The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

17.    A listing on the Registry "must be honored indefinitely, or until the

registration is cancelled by the consumer or the telephone number is removed by the

database administrator." *Id.*

18.    The TCPA and implementing regulations prohibit the initiation of telephone

solicitations to residential telephone subscribers to the Registry and provides a private right

of action against any entity that makes those calls, or "on whose behalf" such calls are

promoted.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

<u>The TCPA Prohibits Prerecorded Calls to Cell Phones</u>

19.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . .

can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

20.    The TCPA makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone

number assigned to a . . . cellular telephone service, specialized mobile radio service, or other

radio common carrier service, or any service for which the called party is charged for the call."

47 U.S.C. § 227(b)(1)(A).

21.    The TCPA provides a private cause of action to persons who receive calls in

violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

22.    According to findings by the Federal Communication Commission ("FCC"), the

agency Congress vested with authority to issue regulations implementing the TCPA, such calls

are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

23.    Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

24.    This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

25.    "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes calls made using artificial or prerecorded voices pitching services. *See* FCC Enforcement Advisory: Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

26.    Non-consensual, non-emergency calls placed using an ATDS or an artificial or prerecorded voice violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory*

*Phones*, 2021 WL 3007258, at *6 (rejecting claim that noncommercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and prerecorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

## Factual Allegations

27.     Plaintiff Weingrad is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

28.     Plaintiff's telephone number, (503) XXX-XXX, is a non-commercial telephone number not associated with any business.

29.     Plaintiff's telephone number has been listed on the National Do Not Call Registry for over a year prior to the calls at issue.

30.     Mr. Weingrad uses the number for personal, residential, and household reasons.

31.     Mr. Weingrad does not use the number for business reasons or business use.

32.     The number is a residential telephone line because it is not assigned to a telephone exchange service for businesses.

33.     The number is assigned to a residential cellular telephone service.

34.     Plaintiff Weingrad never consented to receive calls from Defendants BuyerLink or Harley.

35.     Plaintiff Weingrad never did business with either Defendants BuyerLink or Harley.

36.     Despite this fact, Defendant BuyerLink used illegal robocalls to call the Plaintiff, including after he asked the calls to cease.

37.     As a result of such robocalls, Defendant Harley Exteriors used such robocalls to market and continue to market their services to the Plaintiff, including after he asked the calls to cease.

38.     The first such call was sent using a pre-recorded voice and in an attempt to sell windows from the caller ID 360-203-7076 on August 20, 2024 at 5:29 PM, but did not connect. However, when this number is called back, the caller is connected to the same "Casey Jones" robot described below.

39.     The second such call was sent using a pre-recorded voice and in an attempt to sell windows from the caller ID 253-215-1512 on August 21, 2024 at 1:46 PM, but did not connect. However, when this number is called back, the caller is connected to the same "Casey Jones" robot described below.

40.     The third such call was sent using a pre-recorded voice and in an attempt to sell windows from the caller ID 253-321-2032 on 8/23/2024 at 12:08 PM, possibly using an Artificial Intelligence (AI) robot or Mechanical Turk, and began:

> Hi, Joseph? Oh, hi there. This is Casey Jones calling on behalf of Superior Home. And how are you today?
>
> [I'm good, man. I'm good. I've never been better. What's up with you?]
>
> Oh, I'm sorry to hear that. I'm calling back about an online inquiry, and I'll take just a moment to explain the reason for the call. And just so that you're aware, this call will be monitored or recorded for quality assurance purposes. And actually, the reason that we're calling today is to follow up on a request for more information about replacing your home windows. So whether you're looking to replace your windows for an affordable price, or you want to upgrade or become more energy efficient, now is the time to get a free quote.

41.     Further demonstrating that the call was illegally placed using a prerecorded voice robot, the robot asked for the Plaintiff's permission to transfer the call to a local installer

```
partner,"   "Harley Exteriors" which it stated,   "may use an automatic dialing
system, just like what I've used today to contact you at this number, even if
it's a wireless number."
```

42.    The robot is obviously mistaken. The Plaintiff is not "Joseph," the robot's response that it was "sorry to hear" that the Plaintiff had "never been better" makes no sense, and the Plaintiff never sought a quote to replace home windows.

43.    The robot then transferred the call to an employee of Harley Exteriors, who was obviously human and who tried to sell the Plaintiff windows.

44.    The employee of Harley Exteriors was able to ascertain that Harley did not service the Plaintiff's area and confirmed that the Plaintiff would need to "find someone else who fits more of your needs."

45.    Despite this fact, the Plaintiff received another two calls from Harley Exteriors on August 23, 2024 at 12:39 PM and 4:20 PM from the caller IDs 425-527-0222 and 206-738-9448 trying to sell the Plaintiff windows again. The Plaintiff told this employee not to call him back.

46.    Thereafter, on August 24, 2024, the Plaintiff, through counsel, sent Harley Exteriors a letter asking that they cease and desist from contacting Mr. Weingrad and to ascertain the facts and circumstances of the illegal calls.

47.    Shortly thereafter, the Plaintiff's counsel received a call from Ray Perala, Harley's director of marketing, stating that they were in receipt of the correspondence and would investigate.

48.    However, the Plaintiff received yet another call from the same "Casey Jones" robot at least two more times, including on August 27, 2024 at 3:40 PM from the caller ID 209-264-3009 and on August 29, 2024 at 11:56 AM from the caller ID 206-773-0028.

Complaint                                        9

49.    The voice and scripting on the call was identical, beginning by saying:

```
Hi, Joseph? Oh, hi there. This is Casey Jones calling on behalf of Superior
Home. And how are you today?
[Good.]
Oh, that is great to hear. And just so that you're aware, this call will
be monitored or recorded for quality assurance purposes. And actually, the
reason that we're calling today is to follow up on a request for more
information about replacing your home windows.
```

50.    Shortly after the August 29 call, on August 29, 2024 at 3:32 PM, counsel for the

Plaintiff received an email from Ray Perala stating that Harley Exteriors used BuyerLink to

generate leads and that BuyerLink was the entity responsible for the "Casey Jones" prerecorded

voice robot calls.

51.    Moreover, "Superior Home" is merely an alias for Defendant BuyerLink.

52.    The aforementioned calls were placed using and beginning with a prerecorded

voices because: (a) the robot's questions and speech were sometimes cut off, (b) it would be

illogical for a human to respond that it is "sorry to hear" that a person is doing well, (c) the robot

had the same identical, generic, monotone voice on the calls, (d) the robot admitted it was a

robot, (e) it would be illogical for a human to call someone and play various scripted questions

and statements without the ability to engage in dialogue, (f) the Plaintiff sometimes needed to

repeat his responses multiple times to the robot to advance, (g) the robot repeated the same

identical phrases during different calls the exact same way, just like playing back a recording,

and (h), the Plaintiff was eventually transferred to a human being who was obviously human.

53.    For more than twenty years, the FCC has explained that its "rules generally

establish that the party on whose behalf a solicitation is made bears ultimate responsibility for

any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection

Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

54.    In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

55.    The FCC has instructed that sellers such as Harley may not avoid liability by hiding behind third party agents like Defendant BuyerLink or outsourcing telemarketing and sales operations to third parties, such as BuyerLink:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

56.    In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." Id. at 6574 ¶ 1.

57.    Harley is liable for Defendant BuyerLink's conduct and telemarketing calls placed by BuyerLink and ultimately made for Harley to generate customers for Harley and its agents, including the Plaintiff.

58.    Indeed, Harley's relationship with Defendant BuyerLink contains numerous hallmarks of agency.

59.    For example, Harley was the only legitimate company name listed on the call and disclosed as to the entity to whom the lead was being placed for.

60.    Harley purchased a warm transfer lead based on the prerecorded calls initiated by BuyerLink.

61.    Harley was the only "seller" mentioned on the prerecorded calls initiated by BuyerLink.

62.    In other words, BuyerLink is the entity directly liable for the prerecorded calls because BuyerLink initiated the calls, and then transferred the call to Defendant Harley.

63.    Furthermore, when asked as to why the Plaintiff was receiving calls, Defendant Harley provided counsel for Plaintiff with a recording of the call, as well as BuyerLink's CRM record of the call, demonstrating that Harley contractually obligated BuyerLink to retain such information and produce it to Harley upon demand.

64.    Harley thus had full knowledge of BuyerLink's illegal conduct as far back as August 24 and did not terminate or discipline them, thus implicitly ratifying their actions and endorsing their illegal behavior, including on the August 27 and August 29 calls.

65.    The aforementioned facts also demonstrate that Harley failed to supervise BuyerLink or enforce their compliance with applicable laws and regulations.

66.    Harley could also have eliminated the illegal conduct and risk of TCPA violations complained of herein by selling in a compliant manner directly to consumers, or at the very least following and reporting do not call requests and forbidding its agents from using highly-illegal prerecorded robocalls, but it did not.

67.    Harley was interested in hiring companies to sell its products and services and who would in turn handle all aspects of the sales process, vet potential clients, and only send them the interested ones.

68.    To do so, Harley authorized and hired BuyerLink orchestrate an *en masse* telemarketing campaign using highly-illegal prerecorded robocalls.

69.    Harley controlled the day-to-day activities of BuyerLink by providing the specific criteria for the consumers it would accept and required its agents to adhere to those criteria.

70.    Defendants continued to call Plaintiff despite numerous indications that the Plaintiff was not interested and did not want any further calls.

71.    Finally, Harley could have terminated BuyerLink.

72.    It did not.

73.    By virtue of identifying the criteria for customers they wanted and that they would accept and directing the conduct and other indicia of the calls at issue described above, including failure to communicate Do Not Call Requests, Harley directed BuyerLink in their calling, including by willful omissions.

74.    A reasonable company like Harley whose telemarketers are making calls would investigate into the reasons why their telemarketers would be calling numbers on the National Do Not Call Registry and, moreover, with highly-illegal prerecorded robocalls.

75.    Indeed, Harley could have investigated if Mr. Weingrad's number was on the National Do Not Call Registry.

76.    It did not.

77.    Harley hired BuyerLink without a proper investigation and did not terminate them when they were informed of BuyerLink's illegal calling conduct.

78.    As such, they knowingly ratified BuyerLink's conduct.

79.    Harley also ratified BuyerLink's conduct because, with knowledge of the fact that BuyerLink was calling numbers on the National Do Not Call Registry with highly-illegal prerecorded robocalls, they accepted the Plaintiff's lead and ultimately attempted to sell the Plaintiff windows, including after he expressed them to stop, and continued to allow BuyerLink to call the Plaintiff.

80.    The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

81.    The aforementioned calls to the Plaintiff were unwanted.

82.    The calls were nonconsensual encounters.

83.    The calls were made in an attempt to sell the Plaintiff windows.

84.    The Plaintiff does not own windows.

85.    Plaintiff's privacy has been violated by the above-described telemarketing calls.

86.    Plaintiff never provided his consent or requested the calls.

87.    Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

88.    Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

<u>**Class Action Statement**</u>

89.    Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

90.    Plaintiff brings this action on behalf of himself and the following classes (the "Classes") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3) and Oregon Local Rule 23-2.

91.    Plaintiff proposes the following Class definitions, subject to amendment as appropriate:

**<u>BuyerLink Robocall Class:</u>** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) BuyerLink, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.

**<u>Harley Exteriors Robocall Sub-Class:</u>** Plaintiff and all persons within the United States: (1) to whose cellular telephone numbers (2) BuyerLink, or a third party on their behalf, placed a call using artificial or pre-record messages (3) that advertised, or were intended to advertise, Harley Exterior goods and/or services (4) within the four years prior to the filing of the Complaint.

**<u>National Do Not Call Registry Class:</u>** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

**<u>Internal Do Not Call Registry Class:</u>** All persons within the United States to whom: (1) BuyerLink or Harley Exteriors (or a third-party acting on behalf of Harley Exteriors, like BuyerLink) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not

current customers of Harley Exteriors or BuyerLink at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

92. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any of the Class members.

93. Excluded from the Classes are counsel, Defendants, and any entities in which Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

94. Plaintiff and all members of the Classes have been harmed by the acts of Defendants, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

95. This Class Action Complaint seeks injunctive relief and money damages.

96. The Class as defined above, are identifiable through Defendants' dialer records, other phone records, and phone number databases.

97. Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

98. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

99. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

100. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

101.    There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a.    Whether Defendants made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

b.    Whether Defendants made multiple calls to Plaintiff and members of the Internal Do Not Call Registry Class;

c.    Whether Defendants made calls using artificial or prerecorded voices to Plaintiff and members of the Robocall Class and Sub-Class;

d.    The corresponding degrees and liability as among and between Defendants;

e.    Whether Defendants' conduct constitutes a violation of the TCPA; and

f.    Whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

102.    Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

103.    Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes, and have the financial resources to do so.

104.    Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendants and/or their agents.

105.    The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

106.    Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## FIRST CAUSE OF ACTION

**Statutory Violations of the Telephone Consumer Protection Act
(47 U.S.C. § 227(b)) on behalf of the Robocall Class**

107.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

108.    The Defendants violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

109.    As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

110.    The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendants' actions are found to have been knowing or willful.

111.    Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendants from using a pre-recorded voice in the future, except for emergency purposes.

## SECOND CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act
(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do
Not Call Registry Class)**

112.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

113.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227. by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

114.    Defendants' violations were negligent, willful, or knowing.

115.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award of up to $500 and in damages for each and every call made and up to $1,500 in damages if the calls are found to be willful.

116.    Plaintiff and the members of the National Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers registered on the National Do Not Call Registry, except for emergency purposes, in the future.

## THIRD CAUSE OF ACTION

**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(d))**
**(On Behalf of Plaintiff and the Internal Do Not Call Registry Class)**

117.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

118.    The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending telemarketing calls, except for emergency purposes, to Plaintiff and members of the Internal Do Not Call Class despite previously requesting that such calls stop.

119.    Defendants' violations were negligent, willful, or knowing.

120.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Internal Do Not Call Class are entitled to an award of up to $500 and in damages for each and every call sent and up to $1,500 in damages if the calls are found to be willful.

121.    Plaintiff and the members of the Internal Do Not Call Registry Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making telemarketing calls to telephone numbers who had requested not to be contacted previously, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    Injunctive relief prohibiting Defendants from calling telephone numbers advertising their goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

B.    Injunctive relief prohibiting Defendants from calling telephone numbers who had previously asked not to be called except for emergency purposes, in the future;

C.      Injunctive relief prohibiting Defendants from using artificial or pre-recorded voices to contact cell phones and other protected lines, except for emergency purposes, in the future;

D.      That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing Classes the Court deems appropriate, finding that Plaintiff is a proper representative of the Classes, and appointing the lawyers and law firms representing Plaintiff as counsel for the Classes;

F.      Such other relief as the Court deems just and proper.


## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.


                                Plaintiff,
                                By Counsel,

Dated: December 17, 2024

                                s/Andrew Roman Perrong
                                Andrew Roman Perrong, OSB No. 243320
                                a@perronglaw.com
                                Perrong Law LLC
                                2657 Mount Carmel Avenue
                                Glenside, PA 19038
                                215-225-5529
                                Lead Attorney for Plaintiff and the Proposed Class

s/Anthony Paronich
Anthony Paronich, Mass. BBO No. 678437
(*Pro Hac Vice* Forthcoming)
anthony@paronichlaw.com
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
617-485-0018
Attorney for Plaintiff and the Proposed Class